IN THE OREGON TAX COURT
REGULAR DIVISION
Income Tax

| | | |
|---|---|---|
| CINDY GUA, | ) | |
| | ) | |
| Plaintiff, | ) | **TC 5453** |
| v. | ) | |
| | ) | **ORDER DENYING PLAINTIFF'S** |
| DEPARTMENT OF REVENUE, | ) | **MOTION FOR STAY OF PAYMENT OF** |
| State of Oregon, | ) | **INCOME TAX AND DENYING** |
| | ) | **PLANTIFF'S SECOND MOTION FOR** |
| Defendant. | ) | **ABEYANCE (REDACTED)** |

This matter is before the court on (1) Plaintiff's April 21, 2023, Motion for Stay of Payment of Income Tax under ORS 305.419(3);[1] (2) her letter to the court dated August 30, 2023, and subsequent filings, which the court treats collectively as a second motion for abeyance of these proceedings or as a motion to compel Defendant to process her recently filed Oregon personal income tax returns under ORS 305.265(10); and (3) Defendant's Motion to Dismiss filed September 28, 2023. The court will deny Plaintiff's motions and will act on Defendant's motion after the 30-day period has elapsed for Plaintiff to pay the assessment in full.

## I. PLAINTIFF'S MOTION FOR STAY OF PAYMENT OF INCOME TAX

On or about April 21, 2023, Plaintiff filed her complaint contesting a magistrate's decision that upheld Defendant's assessments of personal income tax for tax years 2016, 2017, 2018, and 2019. The cumulative amount of tax assessed, with interest and penalties computed as

---

[1] Unless otherwise specified, the court's references to the Oregon Revised Statutes (ORS) are to the 2021 edition.

of August 27, 2021, is $869,979.87.[2] (Def's Mot Dismiss, Ex B.) With her complaint, Plaintiff filed her Motion for Stay of Payment of Income Tax along with an affidavit on the court's form that declared information about her income, expenses, assets, and liabilities. Plaintiff argues that immediate payment, as otherwise required under ORS 305.419(1), would impose an undue hardship.

A.    *Plaintiff's April 21, 2023, Affidavit*

The April 21 affidavit discloses a single source of monthly income, ranging from $5,000 to $8,000, from "share of profits as a member of an LLC." As assets, Plaintiff lists modest amounts in one checking account and one savings account at a single credit union ███████ ████████████████████████████████████████████████. In response to a request to identify any real property, the affidavit states "N/A." The affidavit lists a trailer worth $3,000, a motorcycle worth $5,500, and furniture and other personal effects of modest value. As to "money owed to you by others," the affidavit states "N/A." As to living expenses, the affidavit lists "—" for "rent/mortgage." Her remaining living expenses total $4,995 of which the majority is "Credit card payment(s)" averaging $2,755, for personal expenses. The remaining listed living expenses are $130 for "utilities," $1,065 for food, $500 for fuel, and a total of $545 for medical expenses, clothing, personal needs, beauty and cosmetics.

B.    *Defendant's May 22, 2023, Response*

In its May 22, 2023, response to Plaintiff's motion, Defendant pointed out that Plaintiff's

---

[2] The total amounts of tax, penalties, and interest due for each tax year are as follows:

2016: $26,162.81

2017: $83,709.58

2018: $441,131.67

2019: $318,975.81

April 21 affidavit is internally inconsistent because it lists income from profits of an unnamed limited liability company (LLC) but fails to list Plaintiff's interest in the LLC as an asset, or to assign any value to that interest. (Def's Resp Mot Stay Pmt at 3.)

Defendant also argued that additional facts call into question the reliability of the statements in Plaintiff's April 21 affidavit. Defendant submitted an auditor's declaration that included the following factual representations:

- Plaintiff is a managing member of four LLCs engaged in producing and selling marijuana in Oregon, at least one of which (Weedbucks, LLC) filed Oregon sales tax returns during the subject years. (Def's Decl of Lawson at 1.)

- Plaintiff failed to file Oregon personal income tax returns for the subject years.[3] Defendant used the sales tax returns of Weedbucks, LLC, to estimate Plaintiff's income and determine her personal income tax liability for the for the tax years at issue. (*Id*. at 1-2.)

- "Since 2019, when the Department first sent Ms. Gua a Notice of Deficiency for the tax years 2016 to 2019, Ms. Gua has refused to provide the Department with any business or personal financial information or to comply with any requests for documents substantially." (*Id*. at 2.)

The auditor's declaration attaches two orders by the magistrate in the case from which Plaintiff now appeals. The concluding portion of the magistrate's August 17, 2022, Order Denying Plaintiff's Motion for Summary Judgment recites:

"Plaintiff bears the burden of proving that the assessments are in error or should be modified. The court previously gave Plaintiff time to send requested documents to Defendant, but she declined to do so. * * * Within 30 days, Plaintiff shall send requested documents to Defendant as agreed upon during the case management conference held March 18, 2022. Now, therefore,

"IT IS ORDERED that Plaintiff's motion for Summary Judgment is denied.

"IT IS FURTHER ORDERED that, by September 16, 2022, Plaintiff will send

---

[3] Plaintiff later delivered a set of returns to Defendant in late August or early September 2023, as discussed below.

requested documents to Defendant. Plaintiff's failure to comply may result in dismissal of this case."

(Def's Decl of Lawson, Ex 1 at 6.) On February 6, 2023, the magistrate issued an Order of Dismissal, reciting in part:

> "The court set trial by order entered December 7, 2022, and sent separate hearing notices to the parties that same day. Plaintiff did not submit any exhibits by the exchange deadline and failed to appear for trial as scheduled. The court has not received any further communication from Plaintiff. It is Plaintiff's responsibility to prosecute this appeal, and under such circumstances, the court finds this appeal should be dismissed for lack of prosecution."

(*Id*., Ex 2 at 2.) The February 6 order was followed by the magistrate's Decision of Dismissal dated February 27, 2023, from which Plaintiff timely appealed by filing her complaint in this division. (*See* Ptf's Compl, Ex 1.)

C.      *Court's May 25, 2023, Order to Provide Substantiating Documents and Plaintiff's Response*

In an order dated May 25, 2023, the court concluded that it was unable to determine from Plaintiff's April 21 affidavit whether payment of the tax, penalty, and interest would be an undue hardship. The court ordered Plaintiff to substantiate her affidavit by submitting further proof of hardship, as detailed in the table below.

On June 23, 2023, Plaintiff sought an extension, until July 30, 2023, to submit the substantiating documents, which the court granted on July 11, 2023. (Ptf's Mot 30 Days More Time Resp Court's Order at 1); *Gua v. Dept. of Rev.*, TC 5453 (Jul 11, 2023).

On July 27, 2023, Plaintiff requested a second extension, until August 30, 2023, representing that she had requested, but not received, unspecified copies of documents from banks, credit card companies, and other accounts. (Ptf's 2d Mot 30 Days More Time at 1.) On August 9, 2023, the court granted the second extension but ordered Plaintiff (1) to file those responsive documents already in her possession on or before August 17, 2023, and (2) otherwise

ORDER DENYING PLAINTIFF'S MOTION FOR STAY
OF PAYMENT OF INCOME TAX AND DENYING
PLANTIFF'S SECOND MOTION FOR ABEYANCE
TC 5453                                                                                  Page 4 of 17

to comply with the extended August 30, 2023, deadline. *Gua v. Dept. of Rev.*, TC 5453 (Aug 9, 2023).

On August 17, 2023, Plaintiff filed some 200 pages of documents, including a second affidavit also dated August 17, 2023.[4] (*See* Ptf's Initial Set Documents and Request Place Case on Hold.) (Ptf's Initial Set Docs) The court treated her filing, entitled "Initial Set of Responsive Documents and Plaintiff's Request to Place Case on Hold Until September 18, 2023" as a first motion for abeyance. Plaintiff explained that for two years she had been trying to get information necessary for her returns and had been able to do so "[o]ver the last several months." She had found a "competent tax accountant who specializes in the Cannabis business field," and her returns were "now complete and ready to be submitted to the Oregon Department of Revenue." As discussed below, Defendant objected that it had not yet received the returns, and on August 25, 2023, the court denied Plaintiff's first motion for abeyance and ordered that the August 30, 2023, extended deadline to provide documents in response to the May 25, 2023, order remained in effect. Two months later, in response to Defendant's Motion to Dismiss, Plaintiff also filed a declaration dated October 9, 2023, that addressed two items in the court's May 25 order, along with copies of federal income tax returns for the years stated in the order. The table below summarizes all documents ordered to be provided to the court and Plaintiff's responses:

/ / /

/ / /

---

[4] The differences between Plaintiff's affidavit filed August 17, 2023, and the Affidavit of Income, Assets, and Expenses in Support of Motion for Stay of Payment of Income Tax filed with her complaint on or about April 19, 2023, are limited to: (1) A reduction to the low end of the range of her estimated monthly average share of profits from an LLC from "5000-8000" to "4000-8000." (2) The addition of a "███ BMW ███" with a value of "5000." (3) The addition of "(VARIES FOR PERSONAL EXPENSES)" as a description of her credit card payments.

|   | **May 25, 2023, Order** | **Documents Received** |
|---|---|---|
| 1 | All tax returns of Plaintiff filed with the Internal Revenue Service for tax periods in 2018 through April 30, 2023 | Copies for 2018 and 2019 provided to court (Ptf's Decl of Gua, Ex 1)<br><br>Copies for 2020, 2021, and 2022 provided to court (*Id.*, Ex 5) |
| 2 | All Internal Revenue Service Forms W-2, 1099 (of any kind), or K-1 directed to Plaintiff for tax periods in 2018 through April 30, 2023 | None provided to court; not mentioned in Declaration of Gua |
| 3 | A declaration identifying all income or gifts, not reported under items 1 or 2 above, that Plaintiff realized or received from January 1, 2018, through April 30, 2023 | "I have included all income and gifts in my State and Federal Tax Returns for years 2016 through 2022, meeting the declaration requirement that was ordered in #4 of the May 25, 2023, court order." (Ptf's Decl of Gua at 3) |
| 4 | Monthly statements for any bank, brokerage firm, or other financial institution with which Plaintiff held an account, including balances and monthly transactions, for January 1, 2020, through April 30, 2023 | Checking and savings account statements from Rogue Credit Union for periods beginning March 1, 2022, and ending April 30, 2023 (Ptf's Initial Set Docs) |
| 5 | Monthly credit card statements for all credit cards, including balances and itemized transactions, for January 1, 2020, through April 30, 2023 | Citi credit card statements for billing periods beginning December 27, 2019, and ending September 25, 2020 (Ptf's Initial Set Docs)<br><br>Bank of America credit card statements for billing periods beginning December 11, 2019, and ending May 10, 2023 (Ptf's Initial Set Docs) |
| 6 | Any property tax statement issued in 2018 through April 30, 2023, for property held by Plaintiff | "There is no real property tax statement or real property that's held by the plaintiff i.e. Cindy Gua." (Ptf's Decl of Gua at 3.) |

1.      *Review of Plaintiff's Evidence*

The court reviews the foregoing evidence from Plaintiff, consisting of the above documents as well as Plaintiff's April 21, 2023, and August 17, 2023, affidavits and her October 9, 2023, declaration, ignoring for the moment questions of timeliness.[5]  Solely for purposes of

---

[5] Plaintiff filed the October 9, 2023, declaration and copies of federal income tax returns well after the court's August 30, 2023, deadline.

this review, the court will assume that the unsigned, undated federal income tax returns attached to Plaintiff's October 9, 2023, declaration are copies of returns that Plaintiff actually filed with the Internal Revenue Service during the period August through October 2023. Her most recent return, for 2022, reports gross income of $117,577, entirely from "Weedbucks, LLC," a partnership, and taxable income of $104,627. (Ptf's Decl of Gua, Ex 5 (2022 Form 1040; 2022 Schedule E).) The returns for earlier years likewise show gross income entirely from Weedbucks, LLC: $330,228 (2021); $276,656 (2020); $124,519 (2019); and $129,885 (2018).

The court turns to the monthly statements for Plaintiff's credit cards and credit union, which Plaintiff provided on August 17, 2023. The court assumes that she intends the statements she furnished to be a complete set for the period specified in the May 25 order.[6]

The court focuses on the statements for Plaintiff's Bank of America Visa and her credit union, because those statements overlap for approximately the last year: March 2022 through April 2023.[7] Each monthly Bank of America credit card statement shows around 50 charges totaling more than $10,000.[8] The total charges during this one-year period are $178,019. The transactions on the statements appear to consist of business transactions or a mix of business and

---

[6] The court granted each extension Plaintiff requested and allowed her a total of more than three months to comply with the direction to provide monthly statements for "any" financial institution accounts and for "all" credit cards for the period inquired of. On July 27, 2023, when making her most recent request for an extension, Plaintiff represented that she had requested, but not yet received, all account documents. Three weeks later, on August 17, 2023, Plaintiff provided the statements listed above without requesting a further extension and without any explanation.

[7] The Costco-branded Citi Visa statements Plaintiff provided for an earlier period (December 2019 through September 2020) show little activity, typically consisting of several transactions per month at a Costco store or gas station, with the balance paid off each month. However, the court notes that these older statements raise questions as well: Around one-half the payments on the account were made by "ONLINE PAYMENT." Yet Plaintiff has not provided the court with account statements for any financial institution from which payments on the Citi Visa account were made.

[8] The monthly statement balances for the Bank of America credit card averaged $15,071 for 2020, $19,308 for 2021, $13,901 for 2022, and $13,264 for January to May of 2023. (*See* Bank of America Visa Signature Card Statements, *contained in* Ptf's Initial Set Docs.)

ORDER DENYING PLAINTIFF'S MOTION FOR STAY
OF PAYMENT OF INCOME TAX AND DENYING
PLANTIFF'S SECOND MOTION FOR ABEYANCE
TC 5453

personal transactions, although each statement for each account shows solely Plaintiff's name as addressee, without the name of any business entity. Each statement shows that all charges were paid in full; no interest charges were incurred. █████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

By contrast, the credit union checking account statements show a low level of monthly activity, typically not more than a half-dozen debits totaling less than $1,000 and one or two credits. The monthly ending balance never exceeded $3,000. Only one payment, in the amount of $107, appears to have been made from Plaintiff's credit union account to the Bank of America credit card. (Ptf's Initial Set Docs, Rogue Credit Union Stmt Ending 10/31/22 at 5.) The savings account shows no activity apart from a one-time deposit of $5.00 on the first statement provided to the court (March 2022). (*Id*., Rogue Credit Union Stmt Ending 3/31/2022 at 4.)

2. *Whether Plaintiff's Evidence and Declaration Substantiate Plaintiff's Affidavits*

The court seeks to correlate these data with the information stated in Plaintiff's affidavits. As to Plaintiff's income, the $117,577 of gross income from Weedbucks, LLC reported on her federal income tax return for 2022 is roughly consistent with the $5,000 to $8,000 in LLC "profits" that she reported on her affidavits. However, the court cannot verify Plaintiff's income from the other documents provided. ███████████████████████████

█████████████████████████████████████

As to living expenses, the court cannot verify any amount of credit card payments from the information provided, apart from the single payment of $107 noted above. ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████ Plaintiff's affidavits state that she makes payments averaging $2,755, but each payment recorded on the Bank of America statements is invariably two to four times that amount.

Plaintiff's affidavits also report $130 "max" for "utilities." The court finds no entries on any monthly statements that clearly correspond to a utility bill. As for the remaining $2,110 total monthly expenses listed on Plaintiff's affidavits (food, medical expenses, clothing, personal care, and fuel), the court finds no corresponding amounts in the credit union statements, and the court is unable to segregate corresponding amounts from among the many transactions on the Bank of America credit card statements.

The court concludes that the evidence Plaintiff has provided is insufficient to substantiate the income and living expenses listed on Plaintiff's affidavits.

3. *Internal Inconsistencies in Plaintiff's Evidence*

In addition to a lack of substantiation, the court finds that Plaintiff's evidence, before considering any new facts proffered by Defendant, shows several inconsistencies. First, Plaintiff's April 21, 2023, affidavit lists income from her "share of profits as a member of an LLC"; however, the April 21 affidavit does not name, or disclose the value of, any membership interest.[9] Defendant pointed this out in its May 22, 2023, response to Plaintiff's motion for stay, and the court's May 25, 2023, order directed her to provide copies of all "Forms W-2, 1099 (of any kind), or K-1 directed to Plaintiff," but Plaintiff's August 17, 2023, affidavit nevertheless fails to list any interest in a business entity or the value of that interest, and she provided no copies of K-1s. Plaintiff later provided copies of federal income tax returns for herself, on

---

[9] The court's form of affidavit poses the question as follows: "*ALL* OTHER PROPERTY OR ASSETS (*All* other property or assets exceeding $200 in value; for example, furniture, *stocks*, bonds, boats, R.V.s, trailers, campers, guns, and jewelry)." (Affidavit of Income, Assets, and Expenses in Support of Mot Stay Payment Income Tax at page 2 of 3 (emphases added).) Beneath that heading are subheadings for "Description" and "Value," which Plaintiff completed for her furniture, trailer, ████, motorcycle, and in her second affidavit, her car.

October 9, 2023, showing "Nonpassive income *from Schedule K-1*" from Weedbucks, LLC. (Emphasis added.) (*See*, *e.g.*, Ptf's Decl of Gua, Ex 3 (2018 Schedule E at 2).) The court finds that these omissions--particularly the failure to provide the value of her interest in Weedbucks, LLC--cast doubt on whether Plaintiff has disclosed all of her assets.

Second, the evidence raises questions whether Plaintiff had access to additional accounts, beyond the credit union accounts, the Bank of America Visa, and the Costco-branded Visa. The payments made on the Bank of America Visa account, from January 2020 through October 2022, are described as "BA ELECTRONIC PAYMENT." During this period, at least one payment from "BA ELECTRONIC PAYMENT" appears on each Bank of America Visa account statement. The description suggests that the source of the payment is some other financial institution account ███████████. Yet the court finds no corresponding records that would indicate that the source is either of Plaintiff's credit union accounts. In addition, Plaintiff provided copies of monthly statements for her Costco-branded Citi Visa account for December 27, 2019, through September 25, 2020, only. Yet much more recently, three of her credit union checking account statements show withdrawals totaling $ 1,043.77, with a description labeled "CITI CARD ONLINE – PAYMENT." (Ptf's Initial Set Docs (Rogue Credit Union Stmt Ending 9/30/2022 at 4; Rogue Credit Union Stmt Ending 10/31/2022 at 4; Rogue Credit Union Stmt Ending 1/31/2023 at 3).) This suggests that Plaintiff either has continued to maintain the Costco-branded Visa account but failed to provide all the records called for in the May 25, 2023, order, or that she maintained a different Citi account for which she failed to provide any statements whatsoever.[10]

---

[10] The court notes that Plaintiff's affidavits also raise a question about her access to gifts. ███████
████████████████████████████████████████████████████████████████████████████ Her federal income tax returns show no income from barter transactions. The statement in her declaration regarding

D.      *Legal Standard and Application to Plaintiff's Evidence*

Under ORS 305.419(1), income taxpayers generally must pay the amounts assessed in order to pursue an appeal of the assessment in this court. A taxpayer seeking to defer that payment obligation in hopes of prevailing on appeal and voiding the assessment must "establish undue hardship," and failure to do so "will be cause for dismissing the complaint." ORS 305.419(3).[11] The burden is on the taxpayer to prove undue hardship by a preponderance of the evidence. *See* ORS 305.427; *Picker v. Dept. of Rev.*, 370 Or 673, 679, 523 P3d 109 (2022).

The amount of the assessment in this case would be substantial for most individual taxpayers. However, the "undue hardship" standard requires the court to consider the amount assessed in relation to the taxpayer's particular circumstances. This court has construed the standard to mean that the legislature "certainly intended the court to grant hardship relief where immediate payment of the tax would prevent a taxpayer from maintaining a minimal standard of living." *Peterson v. Dept. of Rev.*, 23 OTR 554, 561 (2019). In addition, "the legislature authorized the court to consider other potential factors, such as an excessive, permanent loss that would be caused when a taxpayer would have to sell off property at a distress sale price." *Id*. Finally, the court has observed: "Implicitly, by using the word 'undue,' the legislature also authorized the court to weigh the public policy of ensuring public access to an appeal against the public benefit of an immediate collection (and elimination of the corresponding risk of abuse by taxpayers seeking primarily to delay)." *Id.*

---

gifts is ambiguous, as gifts are excluded from gross income and would not be reported on income tax returns. Because the court resolves Plaintiff's motion on other grounds as discussed below, the court sees no need to pursue these questions further.

[11] The Oregon Supreme Court recently stated: "The required payment [under ORS 305.419(1)] is mandatory and jurisdictional unless the exception set out in subsection (3) applies." *Picker,* 370 Or at 678 (2022).

In this case, Plaintiff's affidavits, declaration, and documents omit important information specifically identified in the court's form of affidavit and in the May 25, 2023, order. Plaintiff has repeatedly failed to disclose, as requested on the court's form of affidavit, the value of any interest in a business even though she claims that "profits" from an LLC are her sole source of support. She also has failed to provide copies of Schedule K-1s from any business entities, as the court ordered on May 25, 2023. The latter failure is significant because Weedbucks, LLC, is identified on Plaintiff's federal tax returns as a partnership. This means that Weedbucks, LLC, necessarily has at least one owner other than Plaintiff. *See* Treas Reg § 301.7701-2(a) (2023) ("A business entity with two or more members is classified for federal tax purposes as either a corporation or a partnership. A business entity with only one owner is classified as a corporation or is disregarded[.]"); ORS 63.810 ("For purposes of [Oregon income tax] a limited liability company * * * shall be classified in the same manner as it is classified for federal income tax purposes."). Therefore, like Forms W-2 from employers or Forms 1099 from business customers, K-1s from Weedbucks, LLC, potentially would provide some measure of third-party verification, on a form filed with the Internal Revenue Service, of Plaintiff's taxable income.

Plaintiff's banking and credit card statements fall short of substantiating her position of undue hardship. They suggest that Plaintiff commingles business and personal expenses on the same credit card ███████████████████████████████████████████████████ ███████. By themselves, these facts do not undermine Plaintiff's position.[12] However, they undoubtedly increase Plaintiff's burden to prove undue hardship. Plaintiff, who has owned and managed a business the last five years, would have been aware that her financial institution

---

[12] ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████

records do not allow a reader to verify the amounts she earns and spends, but she took no steps to identify transactions on her credit card that substantiate her claimed personal expenses, nor did she ask the court for additional time to do so.[13] Moreover, the records she did provide suggest that Plaintiff holds at least one credit card, from Citi, for which she failed to provide statements, and that some electronic transfers to pay both her Citi Visa account and her Bank of America Visa account may have been made from an undisclosed account.

Although the court can glean little from the documents Plaintiff provided to the court regarding the extent of any hardship Plaintiff might suffer from paying the assessment immediately, the court finds some insight in the amount of time she has allowed her returns to go unfiled and her tax unpaid. Her Oregon returns delivered in August 2023 acknowledge that she owes tax for two of the years at issue: 2018 and 2019. (Ptf's Decl of Gua, Ex 1 (2018 Form OR-40-N at 4; 2019 Form OR-40-N at 4).) Those returns were due four and three years ago, respectively. She is deemed to be aware that the law imposes substantial adverse consequences when a taxpayer fails to file a return. *Dungey v. Fairview Farms, Inc.*, 205 Or 615, 621, 290 P2d 181 (1955) ("Every person is presumed to know the law[.]"). Interest has been accruing on the assessed tax. She has chosen to expend time and effort on appeals, but her extensive delay in filing the returns themselves, and paying the amount she owes, does not suggest the kind of urgency that the court ordinarily would associate with an "undue hardship" if she is required to pay the assessment.

The court concludes that Plaintiff has failed to prove undue hardship, based solely on the information she has provided to the court on that subject, and without considering additional

---

[13] Section 9 of the court's form of affidavit, which Plaintiff filed twice, prompts a taxpayer to provide "other information the court should know."

evidence proffered by Defendant. Having reached that conclusion, the court now turns to the parties' arguments under ORS 305.265(10) about the sufficiency of Oregon personal income tax returns Plaintiff sent to Defendant in August and September 2023 and Defendant's actions with respect to those returns.

## II. PLAINTIFF'S MOTION UNDER ORS 305.265(10); MOTION TO DISMISS

### A. *Parties' Filings*

In her August 17, 2023, filing, shortly before her extended deadline to provide substantiating documents, Plaintiff included a first motion for abeyance of this case until September 18, 2023. She asserted that she had recently been able to locate the information needed to prepare her tax returns, as well as a tax accountant familiar with the cannabis business, and that her tax returns for 2016 through 2019 were "complete and *ready to be submitted* to the Oregon Department of Revenue." (Ptf's Initial Set Docs at 1 (emphasis added).) On August 21, 2023, Defendant objected to abating proceedings because it had not actually received any of Plaintiff's returns. (Def's Resp Mot Place Case on Hold at 1-3.) On August 25, 2023, the court denied Plaintiff's first motion for abeyance and left the August 30, 2023, deadline in place. *Gua v. Dept. of Rev.*, TC 5453 (Aug 25, 2023) (slip op at 3).

Also on August 25, 2023, Plaintiff sent copies of her returns to Defendant, apparently by email. (*See* Def's Mot to Dismiss, Ex 3.) On August 29, 2023, Defendant sent the court a letter stating that it had received Plaintiff's 2016 through 2019 Oregon tax returns but had rejected them because they "did not contain information that would allow [Defendant] to assess if the returns [were] substantially correct." (Def's Ltr at 1, Aug 29, 2023.) Defendant's letter stated further that, "if the plaintiff wishes to continue her appeal of the income tax assessment for the tax years 2016 through 2019, she must comply with the court's August 9, 2023, order to provide

sufficient evidence by August 30, 2023, that the assessment would cause undue hardship." (*Id.*) On August 30, 2023, Plaintiff filed a letter with the court stating that she had resubmitted her 2016 through 2019 Oregon tax returns to Defendant, this time with copies of federal returns for those years. (*See* Ptf's Ltr at 1, Aug 30, 2023; Ptf's Decl of Gua at 2.) She stated that she had asked Defendant's auditor to request a stay of proceedings in this matter as allowed under ORS 305.265(10). (*See id.*) The court treats Plaintiff's August 30 letter as a second motion for abeyance.

On September 21, 2023, the court scheduled a case management conference to obtain current information about the parties' positions, including whether Defendant had received and accepted the returns Plaintiff claimed to have resubmitted on August 30. On September 28, 2023, Defendant filed its Motion to Dismiss, arguing that dismissal is proper because Plaintiff had failed to prove undue hardship and because the court lacks jurisdiction to review Defendant's actions regarding Plaintiff's recently filed returns. Having received Defendant's motion, the court canceled its case management conference. On October 9, 2023, Plaintiff objected to dismissal and requested a hearing regarding the processing of her returns. (Ptf's Mot Deny at 1, 9-10.)

B.     *Analysis Under ORS 305.265(10)*

Both parties refer to ORS 305.265(10) in their briefings since August 27, 2023. That statute, dating materially to 1999, provides various procedures that apply when, as here, a taxpayer fails to file returns.[14] Paragraph (a) requires Defendant to "determine the tax *according to the best of its information and belief*, [and to] assess the tax plus appropriate penalty and

---

[14] *See* Or Laws 1999, ch 532 (SB 495).

interest * * *." (Emphasis added.)[15]  Paragraphs (b) and (c) provide circumstances in which Defendant may accept or reject returns the taxpayer chooses to file after having been so assessed. Under paragraph (d), the taxpayer may appeal the rejection of a return "to the magistrate division of the Oregon Tax Court," but "only if" the return was filed within 90 days of the assessment and the appeal is filed within 90 days after the notice of rejection.  Paragraph (e) applies when, as here, the taxpayer has both appealed the assessment to the Tax Court and filed returns that Defendant has not yet accepted or rejected; that provision allows "the department" to request a stay of action from the court pending review of the returns.  Assuming that Defendant does accept the late-filed returns, paragraphs (f) and (g) allow Defendant to reduce the assessment, and to issue refunds.

The court finds nothing in ORS 305.265(10) that authorizes this division of the court to act with respect to Defendant's processing or handling of the returns Plaintiff filed in this case. Paragraph (e) does not apply because that provision requires *Defendant* to have requested a stay, and it has not done so.  As to paragraph (d), there is evidence that Defendant rejected the returns Plaintiff delivered August 25, 2023, but the statute expressly requires any appeal of that rejection to be filed in the Magistrate Division.  Plaintiff argues that Defendant has not notified her whether it has accepted or rejected the set of returns she resubmitted on August 30, 2023.  (*See* Ptf's Mot to Deny at 5.)  She urges the court to hold a hearing "to hear from the proper DOR employee who oversees receiving the tax returns of Plaintiff, to come before the court and give

---

[15] Other references to assessment based on Defendant's "best information and belief" appear elsewhere in Oregon income tax law.  *See, e.g.,* ORS 314.400(2)(b), (3)(b); *see generally Rau v. Dept. of Rev.*, 13 OTR 190, 193 (1994) ("The law makes the tax assessed by the department the final tax regardless of what the taxpayer's actual income or tax liability may have been. It is a painful lesson for most taxpayers because a tax based on the department's best information and belief, plus the penalties and interest that must be imposed, almost always exceed the amount of a self-assessed tax. This is strong medicine but it may be necessary to keep a self-assessed tax system healthy."); *Curtis v. Dept. of Rev.*, 338 Or 579, 581, 112 P3d 330 (2005) (upholding Defendant's "best information" assessment).

employee who oversees receiving the tax returns of Plaintiff, to come before the court and give testimony under oath to determine whether the DOR has accepted the tax returns of Plaintiff or rejected them * * *." (*Id.*) However, an alleged failure to issue a notice of rejection is an "omission" that likewise must be heard in the Magistrate Division in the first instance. *See* ORS 305.275(1)(a), (b); ORS 305.501(1). The court concludes that there is no basis for the hearing Plaintiff seeks in this division.

## III. CONCLUSIONS

The court finds no undue hardship; therefore, Plaintiff's Motion for Stay of Payment of Income Tax is denied. As permitted by ORS 305.419(3), the court will allow Plaintiff until January 8, 2024, to pay the tax, penalty, and interest assessed in this case. Defendant is to notify the court and Plaintiff no later than January 17, 2024, whether Plaintiff has paid the amounts assessed.

The court further concludes that ORS 305.265(10) does not authorize the court to grant Plaintiff's second motion for abeyance, and the court declines to grant abeyance on any other ground. Plaintiff's second motion for abeyance is denied.

Accordingly, if Plaintiff fails to timely comply with the payment requirement above, the court will grant Defendant's Motion to Dismiss. If Plaintiff timely complies with the payment requirement above, the court will deny Defendant's Motion to Dismiss, and the case will proceed as provided in the court's rules. Now, therefore,

IT IS SO ORDERED.

Dated this 8th day of December, 2023.

12/8/2023 10:42:35 AM

Judge Robert T. Manicke

ORDER DENYING PLAINTIFF'S MOTION FOR STAY
OF PAYMENT OF INCOME TAX AND DENYING
PLANTIFF'S SECOND MOTION FOR ABEYANCE
TC 5453